IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

PHILLIP LUTHER MOORE, II, )
)
    Plaintiff, )
)
v. ) 1:07cv410 (LMB/TRJ)
)
FAIRFAX COUNTY, VIRGINIA, et al., )
)
    Defendants. )

## Memorandum Opinion

    Phillip Luther Moore, II ("Moore") has filed various federal and state claims against Fairfax County police officers Eric Ivancic ("Ivancic"), Richard Shughart ("Shughart"), Andrew Smuck ("Smuck"), and Joseph Ankers ("Ankers"), also referred to as "the defendant officers," alleging that the defendant officers used excessive force in stopping him for felony shoplifting and maliciously prosecuted him for assaulting a police officer. Moore has also sued Fairfax County and the county's Chief of Police David Rohrer ("Rohrer") for maintaining a custom and policy of excessive force and negligently training and supervising the defendant officers.

    Before the Court are the defendant officers' Motion for Summary Judgment, and defendants Fairfax County's and Chief Rohrer's separate Motion for Summary Judgment. For the reasons discussed below, the Court finds that summary judgment in favor of all the defendants is appropriate.

## I. Procedural Background and Moore's Remaining Claims

In his five-count complaint,[1] Moore alleges in Count I that the defendant officers "deprived him of his right to equal protection of the laws and impeded the due course of justice," in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983. In Count II, citing § 1983 and the Fourth, Fifth, Sixth, and Eighth Amendments, Moore asserts: (a) that the defendant officers used excessive force and subjected him to "punishment without the benefit of a trial by jury" and to "unwarranted and unreasonable restraints without due process,"; (b) that Rohrer failed to properly train and supervise the defendant officers, failed to enforce federal and state laws concerning the use of force, and issued "vague, confusing and contradictory policies concerning the use of force"; and (c) that Fairfax County had a custom and practice of using unconstitutional and excessive force. In Count III, Moore alleges that he was falsely arrested by the defendant officers, in violation of the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983. Counts IV and V asserts a variety of state causes of action, including: false arrest and imprisonment, assault and battery, malicious prosecution, abuse of process, prima facie tort, conspiracy tort,

---

[1] Moore initially filed this action in the United States District Court for the District of Maryland. The action was subsequently transferred to this district.

2

negligence, gross negligence, negligent hiring and retention, <u>respondeat superior</u>, and "negligence and/or gross negligence."[2]

Moore seeks a judgment, jointly and severally against all defendants, in the amount of $7 million in compensatory damages, $17 million in punitive damages, and attorneys fees pursuant to 42 U.S.C. § 1988.

Given the numerous concessions in plaintiff's opposition to defendants' summary judgment motions, the only remaining federal claims are that Ivancic and Smuck used excessive force against Moore and falsely arrested him; that Rohrer violated Moore's rights by failing to train and supervise the defendant officers properly; and that the County had a custom and practice of using unconstitutional and excessive force. Also remaining are state law claims — false arrest, false imprisonment, gross negligence,

---

[2] Counts IV and V against Fairfax County and Rohrer, in his official capacity, and the conspiracy claim in Count IV against all defendants have been dismissed.
  In his opposition to the summary judgment motions, Moore concedes that Shughart and Ankers are entitled to summary judgment on all claims, and that Ivancic and Smuck are entitled to summary judgment as to all state law claims against them in their official capacities.
  Moore also concedes that Ivancic and Smuck are entitled to summary judgment as to the state law claims against them in their individual capacities, with the exception of three: (1) false arrest; (2) false imprisonment; and (3) gross negligence. Although Moore explicitly makes this concession, he continues to assert his claims of assault and battery, malicious prosecution, and abuse of process in his opposition. The Court, therefore, will address these additional claims.
  Finally, Moore concedes that he has no viable claim of <u>respondeat superior</u> against a government entity, although the Court previously dismissed this claim as against the County.

assault and battery, malicious prosecution, and abuse of process — against Ivancic and Smuck, in their individual capacities, and gross negligence against Rohrer, in his individual capacity.

## II. Factual Background

The following facts are not in dispute. On December 1, 2005, Ivancic, Shughart, Smuck, and another Fairfax County Police Officer, Matthew Luik ("Luik"), were working a plainclothes assignment as members of a Christmas Anti-Theft Team (CAT Team) at Tysons Corner Mall in Fairfax County, Virginia, to focus on retail theft, credit card fraud, check fraud, identity theft, and other retail-related crimes that commonly occur during the winter holiday season at area shopping malls.

At approximately 6:00 p.m., a Nordstrom Loss Prevention Officer, Iganicos Reyes ("Reyes"), who was observing the store through security cameras, notified Luik that he suspected that two individuals, a black male and a black female, were attempting to make fraudulent returns of merchandise. Luik and Smuck reported to the Nordstrom Loss Prevention Office where, through the security cameras, they saw the black woman, later identified as Shemika Mason (Mason), try to return an item of clothing without any proof of purchase. After a clerk denied the return, Mason left the store and got into a silver Honda Civic parked outside. Luik and Smuck next watched a black male, later

4

identified as Moore, successfully return two items, one with a receipt and one without a receipt, to a Nordstrom clerk. They watched Moore leave and get into the same Honda Civic Mason had entered. At this point, Luik contacted members of the CAT Team, including defendants Shughart and Ivancic, described what he had seen, and asked Shughart and Ivancic to drive their unmarked police minivan to the area where the Honda Civic was parked. In response, Shughart and Ivancic drove to the parking lot.

After a few minutes, Smuck and Luik saw Moore, Mason, and another black woman leave the Civic and re-enter the Nordstrom store. Once inside, the three separated. Smuck and Luik noticed that Moore appeared to be talking on a cell phone while browsing through a rack of men's clothing. The officers also saw the Honda Civic move toward the Nordstrom entrance and stop in the adjacent fire lane. Luik left the store to go to his police cruiser.

Meanwhile, Mason, Moore, and the other woman moved toward the store's exit. As they did, Moore grabbed two leather jackets, each valued at $1,450, and immediately left the store with the two women without paying for the jackets. The two women got into the back seat of the Civic, and Moore got into the front passenger seat. A fourth woman, later identified as Toni Williams ("Williams"), was driving the car.

Smuck advised Luik, who was by then in his marked police

cruiser, of what had happened and informed him that the Civic was last seen heading toward Leesburg Pike. As Luik drove toward Leesburg Pike in search of the Civic, Smuck, along with Reyes, ran out of the store in the direction where the Civic was last seen. Two bystanders described to Smuck the direction in which the Civic had gone. In response to what these bystanders told him, Smuck radioed a lookout for the Civic and began running along Tysons Boulevard in the direction the Civic was traveling.

Shughart, who was driving the unmarked minivan, and his partner Ivancic, who was a passenger, pulled alongside Smuck, and Smuck got into the minivan, which entered onto Leesburg Pike. While stopped at a red light at the Gallows Road intersection, Shughart, Ivancic, and Smuck saw the Civic stopped a few cars ahead of them at the same light. When the light turned green, the officers saw the Civic make three or four very quick lane changes, cutting off other drivers, and turn onto Gallows Road. At the next intersection, the car made a quick, improper U-turn in front of on-coming traffic that was traveling northbound on Gallows Road.[3]

The Civic stopped again in heavy traffic, now in the northbound right turn lane of Gallows Road at Leesburg Pike.

---

[3] According to defendants, a vehicle traveling northbound on Gallows Road swerved and hit its brakes to avoid colliding with the Civic. Moore does not concede that the Civic made the three or four very quick lane changes or cut off other drivers, but he does describe the quick, improper U-turn.

Shughart, Ivancic, and Smuck were in the same lane only two cars back. Based on the officers' knowledge that Moore had committed a crime, the evasive driving of the Civic, and the location of the car — essentially blocked by surrounding traffic — the officers decided to stop the Civic.

The parties present different versions of what happened next. According to the defendants, Shughart, Ivancic, and Smuck approached the Civic with their service weapons drawn. Each officer wore an orange armband with the word "POLICE" displayed and had a police badge displayed around his neck or waistband. Shughart and Smuck approached the driver's side of the Civic and Ivancic approached on the passenger's side, finally positioning himself adjacent to the passenger side front tire with his body against the quarter panel and was leaning against the Civic looking through the windshield. Shughart and Smuck were focused on the driver, Williams, to whom they were saying "police, don't move" and "police, put your hands up." Ivancic was focused on Moore, who was sitting in the front passenger seat.

Another officer, Ankers, who was driving a marked Fairfax County Police cruiser, happened to be stopped about two cars ahead of the Civic at the same traffic light. When Ankers heard yelling behind him, he got out of his car, and shined his flashlight on his uniform to identify himself as a police officer. Ankers recognized the members of the CAT Team and could

7

hear them giving commands to the Civic's occupants who were not complying with orders to open the door. Ankers walked to the driver's side window and observed Williams with her hands up in the drivers seat. Ankers ordered Williams to get out of the vehicle. Williams did not comply. In response, Ankers took his baton and told Williams several times to open the door or that he would break the window. Because Williams did not open the door, Ankers began to break the driver's side window with his baton.

As Ankers was breaking the window, Williams moved from the driver's seat into the back seat, and Moore, ignoring commands from Ivancic to remain still with his hands up, began to move from the front passenger seat into the driver's seat. By this point, Ankers forearm had gone through the glass, and Smuck had also put his arm through the broken window in an attempt to open the driver's door. However, with Moore in the driver's seat, the Civic lurched toward the two officers.

Given the circumstances, and fearing that Ankers and Smuck would either be run over by the lurching Civic or be dragged because their arms were in the car, Ivancic fired his service weapon at Moore. Rather than complying with the order to stop, Moore turned the Civic to the right, in the direction of Ivancic. Ivancic felt something on his foot and believed that the Civic might have run over his foot. He also felt the car brush up against his right thigh. Fearing for his life as the Civic

approached him, Ivancic jumped backwards and continued firing into the car, primarily in the direction of Moore's groin to avoid striking any other passengers.

Despite the gunshots, Moore drove the car over a curb, a sidewalk, and a grass embankment, through an adjacent bank parking lot, and onto the eastbound lanes of Leesburg Pike. Believing that Ivancic was hit by the car, Smuck fired at the back of the car as it jumped the curb. Ivancic also continued to shoot at Moore, believing that Moore's escape put the public in grave danger and that Moore had used the car in an attempt to harm the officers. Ankers, who had cut his arm breaking the car window, returned to his marked cruiser and pursued the fleeing Civic. The parties agree that Ivancic's shots hit Moore in the right hand, the back of his right shoulder, and his groin, but hit no other occupants, and none of Smuck's shots hit anyone.

In his opposition brief, Moore differs with the defendants' version of the facts, contending instead that both he and the driver put their hands up as directed but that, as the window of the car was being broken, the female driver moved to the back of the car. Moore claims that "Ivancic started discharging his service weapon without provocation and while Mr. Moore [sic] hands were up in the air pursuant to the Officer Ivancic [sic] order as he was still sitting in the passenger seat." However, Moore also admits moving into the driver's seat although he

9

claims he did so only after fearing that his life was in danger.

The events following the gunshots are not disputed. Moore drove the Civic onto Leesburg Pike directly in front of Luik who was in a marked police cruiser. Luik began to follow the Civic, which struck several vehicles as it sped from Leesburg Pike to Interstate 495 and continued northbound toward Maryland. At times, Moore's speed exceeded 100 miles per hour during the high speed chase that ended when Moore crashed the Civic into another vehicle on Colesville Road in Montgomery County, Maryland. Moore was removed from the Civic by Montgomery County Police Officers and treated at the Washington Hospital Center for gunshot wounds in his right hand, groin, and upper back.

Five days later, on December 6, 2005, Moore was arrested by Fairfax County police detective Robert J. Murphy ("Murphy") for attempted malicious wounding of Ivancic. Moore's videotaped statement to Murphy contradicts the allegations in his opposition to defendants' summary judgment motions. In that statement, Moore admitted that he knew the people standing on either side of the Civic were police officers and that he did not put his hands up despite the officers' commands to do so. Moore also admitted that once the driver's side window was broken, he jumped into the driver's seat and that it was not until he made that move that any officer started shooting. Finally, Moore said that he did not surrender because he did not want to go to jail at that time.

On February 21, 2006, a Fairfax County grand jury issued a five count indictment against Moore for attempted malicious wounding of Ivancic, grand larceny from Nordstrom, felony speeding to elude, and two counts of failing to stop after an accident. On June 5, 2006, Moore pled guilty to all counts except for the attempted malicious wounding. On June 7, 2006, a jury found Moore not guilty of the attempted malicious wounding of Ivancic.

III. Analysis

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1985). In ruling on a motion for summary judgment, the court must accept the evidence of the non-moving party and all justifiable inferences must be drawn in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, to overcome summary judgment, the non-moving party must, beyond the pleadings and mere allegations, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 323. The non-moving party cannot successfully survive summary judgment by establishing "the mere existence of a scintilla of evidence in support" of his position; to the contrary, he must proffer

"evidence on which the jury could reasonably find [in his favor]." Liberty Lobby, 477 U.S. at 251-52; Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986).

### A. Moore's Constitutional Claims

The defendants have asserted qualified immunity as a complete defense to Moore's remaining constitutional claims in Counts I, II, and III. The threshold question in evaluating the defense of qualified immunity is whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right?" Scott v. Harris, 550 U.S. __ (2007) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" Id.

The Fourth Circuit has clarified that, at the summary judgment stage, the view that various versions of facts must be "meticulously sorted out by the factfinder . . . misconceives the basic purpose of qualified immunity which is to spare individual officials the burdens and uncertainties of standing trial in those instances where their conduct would strike an objective observer as falling within the range of reasonable judgment."

12

Gooden v. Howard County, Maryland, 954 F.2d 960, 965 (4th Cir. 1992). Moore concedes that to avoid summary judgment he must establish a factual dispute that is both "genuine" and "material." A factual dispute is material if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A factual dispute is genuine only if both parties have set forth sufficient admissible evidence to support their factual allegations. Matsushita Electric Co. V. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Here, there are no genuine issues of disputed material facts, because no reasonable jury could credit Moore's version of the events as alleged in his complaint. The defendants have presented evidence that Moore's detailed, original account of the events — presented in his post-arrest interview with police officers — was consistent with the defendants' version of the events. Specifically, the defendants testified in deposition that Moore did not comply with the officers' instructions and that he was not shot until he moved into the driver's seat and put the car in motion. The defendants have also put forth ballistic and other physical evidence, and expert reports supporting their version of the events. In response, Moore has presented mere allegations and inadmissible evidence.

In the Fourth Circuit, a "genuine issue of material fact is not created where the only issue of fact is to determine which of

the two conflicting versions of the plaintiff's testimony is correct." Halperin v. Abacus Tech. Corp., 128 F.3d 191, 198 (4th Cir. 1984). Applying Halperin to this case, it is clear that there are no genuine issues of material fact and summary judgment is appropriate.[4]

The Court's analysis of Moore's excessive force claims are guided by the Supreme Court, which has established that all claims against law enforcement for excessive force should be analyzed under the Fourth Amendment and its objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 395-97 (1989). Moreover, the Supreme Court has held that, where a police officer has "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others, it is not constitutionally unreasonable to prevent escape by using deadly force." Tennessee v. Garner, 471 U.S. 1, 11 (1985). In determining whether a use of force is constitutional, the test is whether a reasonable officer in the same

---

[4] Moore submitted twenty-three (23) exhibits with his opposition to the summary judgment motions. Several of these exhibits contain inadmissible hearsay. Others, such as Exhibits 14 and 24 are not made under the penalty of perjury. Many, such as Exhibits 3-9, which included photographs of the plaintiff's injuries and hospital records, are completely consistent with the defendants version of events. Exhibit 19, a video deposition of Moore taken on August 10, 2007, in which he claims that he was shot by police while he was sitting in the passenger seat and holding his hands up, contradicts Moore's statement to Murphy on December 6, 2005 and the substantial evidence presented by the defendants.

circumstances could have concluded that a threat existed, justifying the particular force used. Graham, 490 U.S. at 396-97. The Court may not employ "the 20/20 vision of hindsight" and must make "allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving." Id.

The unrebutted evidence establishes that Ivancic and Smuck acted reasonably when they fired at Moore. From Ivancic's perspective at the time he made the decision to fire his weapon, Moore clearly presented a threat of serious bodily harm to Ivancic's fellow officers, to Ivancic himself, and to other innocent drivers. The repeated refusal of the Civic's occupants to comply with reasonable and appropriate commands from the officers and Moore's movement into the driver's seat clearly presented the officers with a highly threatening scenario. Finally, Ivancic had little choice but to use his weapon against Moore when Moore drove the Civic in his direction. Similarly, Smuck's decision to fire at the vehicle was reasonable, given his fear that Moore might have used the Civic to assault Ivancic and posed a grave threat to the public based on his aggressive driving, which included jumping a curb and driving over the sidewalk and an embankment.

Moreover, there is no question, based on the facts established by both parties that the officers had probable cause

to arrest Moore for the felony theft of the leather jackets from Nordstrom.[5] Because Moore cannot establish that any of the defendant officers at the scene violated his constitutional rights, he cannot, as a matter of law, maintain his claims against either Rohrer for failing to properly train or supervise the officers or against the County for having a custom or practice of using unconstitutional excessive force. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) Moreover, he has failed to present any evidence to support these claims.

### B. Moore's State Claims against Ivancic and Smuck

Ivancic and Smuck are also entitled to summary judgment on Moore's state law claims of false arrest, false imprisonment, gross negligence, assault and battery, malicious prosecution, and abuse of process brought against the officers in their individual capacities.

To establish a prima facie case of false arrest, Moore must prove that he was arrested without probable cause. Moore is precluded from making this claim because, on June 5, 2006, he pled guilty to grand larceny in connection with the theft from Nordstrom, felony speeding to elude, and two counts of failing to

---

[5] In Virginia, officers "may arrest, without a warrant, any person who commits any crime in the presence of the officer and any person whom he has reasonable grounds or probable cause to suspect of having committed a felony not in his presence. Va. Code Ann. § 19.2-81.

stop after an accident. Klaff v. Virginia Ry. & Power, 91 S.E.2d. 173, 174 (1917). His acquittal on the malicious wounding charge does not undermine the probable cause for his initial arrest.

Moore's false imprisonment claim fails because he has not shown that his liberty was restrained without lawful process. Montgomery Ward & Co. V. Wickline, 50 S.E.2d 387, 389 (1948). As discussed above, the officers had abundant probable cause to stop the Civic and detain Moore based upon what they witnessed about the theft from Nordstrom and the dangerous driving behavior of the Civic. Therefore, any "imprisonment" that followed was clearly the result of lawful process.

Moore has put forth no evidence to support his claim of gross negligence. If a police officer exercises "some degree of diligence and due care" and his actions do not reveal an "utter disregard of prudence amounting to a complete neglect of the safety of another," then a prima facie case of gross negligence is not established. Colby v. Boyden, 400 S.E.2d 184, 189 (1991). Although Ivancic and Smuck did discharge their weapons, Ivancic testified that he purposely aimed low to avoid striking the three other passengers in the car. The ballistic evidence is consistent with that testimony and obviously that tactic was successful, as no occupant of the car, other than Moore, was shot and none of Moore's wounds were life-threatening. Because

plaintiff has failed to present any evidence of the defendant officers acting negligently or using excessive, the officers are entitled to summary judgment on Moore's claim of assault and battery. McLenagan v. Karnes, 27 F.3d 1002, 1009 (4th Cir. 1994).

Lastly, Moore has not established a prima facie case of either malicious prosecution or abuse of process under Virginia law. A prima facie case of malicious prosecution in Virginia requires a showing that the prosecution was malicious; instituted by, or with the cooperation of, the defendant; without probable cause; and terminated in a manner not unfavorable to the plaintiff. Hudson v. Lanier, 497 S.E.2d 471 (1998). Moore has put forth no evidence of malice or other ulterior purpose motivating the defendant officers' actions, and he has failed to show that the defendants lacked probable cause to arrest and charge him. Id. at 473. Therefore, these claims fail.

An abuse of process claim requires a showing of a defendant's ulterior purpose and an act in the use of process not proper in the regular prosecution of proceedings. Donohoe Constr. Co. v. Mount Vernon Assoc., 235 Va. 531, 539-40 (1988). Without any evidence of an ulterior motive or act satisfying these elements, Moore's claim has no merit.

18

### C. *Moore's Claims against the County and Rohrer*

In his opposition, Moore does not address the County's and Rohrer's argument that they cannot be held liable on Moore's claims of failure to train and supervise. Moreover, Moore does not address Rohrer's argument that there is no basis for liability on any of the state law counts remaining against him in his individual capacity. Moore's failure to respond to these arguments, as well as the findings discussed above lead to the inevitable conclusion that these claims are meritless and that the County and Rohrer are entitled to summary judgment on these claims.

### IV. Conclusion

For all of these reasons, defendants' motions for summary judgment have been granted. A separate order consistent with this opinion will be entered.

Entered this 9th Day of November, 2007.

/s/ 
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia